UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
        v.                          )    Crim. No.  4:05-cr-40023-FDS
                                    )
THOMAS EUGENE MARTIN                )
        a/k/a "TJ,"                 )
                        Defendant.  )
_____)

**GOVERNMENT'S RESPONSE TO MOTION TO REDUCE SENTENCE
DUE TO ALLEGED SENTENCING MANIPULATION**

The United States of America hereby responds to the *Motion for Reduction in Sentence Due to Government Sentencing Manipulation*, which was filed by the defendant, Thomas Eugene Martin, a/k/a "TJ," (hereinafter "Defendant" or "Martin") on September 28, 2006.  As the factual record underlying Defendant's motion has not yet been developed, the government respectfully reserves the right to supplement this response at the time of sentencing.

   1. **BACKGROUND**

This case stems from the deployment of the DEA's Mobile Enforcement Team (the "MET Team") in the Fitchburg area in late 2004 and early 2005.  During the deployment, DEA agents assigned to the MET Team assisted local law enforcement officials in battling illegal drug activity in the greater Fitchburg area.  The instant crack cocaine prosecution against Martin was one of the many federal drug prosecutions that stemmed from this joint effort.

In early 2005, before accepting assistance from the MET Team, local police officers had been targeting a three-family residence at 41 Dumais Street in Fitchburg, Massachusetts, which was a known "crack house" in the area.  Officers had received information that Martin and other residents of 41 Dumais Street were selling crack cocaine out of this three-family home.  Local

police officers joined the MET Team as Task Force Agents ("TFAs") and worked collaboratively with the DEA agents to arrange controlled buys of crack cocaine from Martin.

On March 2, 2005, a confidential informant ("CI") placed a series of recorded phone calls to Martin using the cell phone of an undercover DEA agent (the "UC"). The calls were made in the presence of the UC, who monitored each call. The CI told Martin that he wanted to introduce him to someone (the UC, who was posing as a crack cocaine customer) who was interested in purchasing a half-ounce (14 grams) of crack cocaine from Martin. Martin agreed to sell 14 grams of crack cocaine to the UC for $550. They agreed to meet outside of Martin's residence at 41 Dumais Street in Fitchburg.

The CI and UC traveled to 41 Dumais Street in an undercover vehicle and at Martin's direction, parked outside on the street and waited for Martin to join them. At approximately 4:30 p.m., Martin exited 41 Dumais Street, met the CI on the street, then accompanied the CI into the UC's vehicle for the drug deal. After the CI made introductions, the defendant handed a small plastic bag containing a white rock-like substance to the UC, who weighed the bag on a digital scale. When the UC attempted to return the bag to Martin because it weighed only 11.1 grams, Martin reached into his pocket and gave the UC four additional small bags containing a white rock-like substance. After obtaining a new reading of 14.1 grams, the UC gave $550 to Martin. The MET Team sent the package to the DEA lab, which confirmed that Martin sold 10.9 grams of cocaine base to the UC.

### 2.     **DEFENDANT'S MOTION**

On April 28, 2005, a federal grand jury returned a one-count indictment against Martin, charging him with distributing at least 5 grams of cocaine base, also known as crack cocaine, on March 2, 2005, in violation of 21 U.S.C. § 841(a)(1). In his instant motion, Martin "admits he

distributed the amount of base cocaine that is alleged in the Indictment, however, he alleges but for the Government's coercion, he would not have converted the powder cocaine to base." *Deft's Memo.* at 1. Based on this assertion, Martin "requests a hearing so that evidence can be presented with regard to sentencing factor manipulation." *Id.*

    3.    **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION**

        a.    **The Sentencing Factor Manipulation Doctrine**

Sentencing factor manipulation occurs "where law enforcement agents venture outside the scope of legitimate investigation and engage in extraordinary misconduct that improperly enlarges the scope or scale of the crime" in order to increase a defendant's sentence. *United States v. Barbour*, 393 F.3d 82, 86 (1st Cir. 2004). It is a sentencing factor for the court to determine by a preponderance of the evidence. *See United States v. Fontes*, 415 F.3d 174, 180 (1st Cir. 2005). As stated by the First Circuit:

> In instances in which sentencing factor manipulation, as we have defined it, overbears the will of a defendant predisposed only to committing a less serious crime, we see no reason why the defendant should be forced to undergo the rigors of trial simply to preserve his ability to challenge the government's conduct at sentencing.

*United States v. Connell*, 960 F.2d 191, 197, n.9 (1st Cir. 1992). Accordingly, the entry of a guilty plea does not preclude the defendant from raising a claim of improper sentencing factor manipulation at sentencing. *Id.*

When a sentencing court finds that sentencing factor manipulation has occurred, it may remedy the situation by either: (1) departing downward from the U.S. Sentencing Guideline range (the "GSR") and/or the otherwise applicable statutory mandatory minimum sentence, or (2) "excluding the tainted transaction from the computation of relevant conduct." *United States v. Montoya*, 62 F.3d 1, 3 (1st Cir. 1995); *see also Connell*, 960 F.2d at 195. Before departing

below a statutory mandatory minimum sentence, however, the court must find that the manipulation was "extreme and unusual."  The First Circuit has repeatedly warned that "downward departures based on sentencing factor manipulation are equitable remedies that courts only invoke in 'the extreme and unusual case.'"  *United States v. Capelton*, 350 F.3d 231 (1st Cir. 2003); *see also Fontes*, 415 F.3d at 180 (warning that equitable remedy of departing below statutory mandatory minimum "is reserved for only 'the extreme and unusual case'") (quoting *Montoya*, 62 F.3d at 4).

### b.     Burden of Proof and Legal Standard

The defendant carries the burden of proving a sentencing factor manipulation claim by a preponderance of the evidence.  *Fontes*, 415 F.3d at 180; *United States v. Gibbens*, 25 F.3d 28, 32 (1st Cir. 1994).  The defendant must show that the law enforcement agents "overpowered the free will of the defendant and caused him to commit a more serious offense than he was predisposed to commit."  *Barbour*, 393 F.3d at 86.  The evidence must establish that the government acted "in bad faith."  *Capelton*, 350 F.3d at 246.   Improper manipulation is <u>not</u> established simply by showing that (i) the idea originated with or was encouraged by the government, (ii) the crime was "prolonged beyond the first criminal act," or (ii) "exceeded in degree or kind what the defendant had done before."  *Montoya,* 62 F.3d at 3-4 (citations omitted).  This is because the government is given broad leeway "to explore the full contours of a defendant's criminal activity."  *United States v. Egemonye*, 62 F.3d 425, 427 (1st Cir. 1995). As stated by the First Circuit:

> By their nature, sting operations are <u>designed to tempt the criminally inclined</u>, and a well-constructed sting is often <u>sculpted to test the limits of the target's criminal inclinations</u>. Courts should go very slowly before staking out rules that will deter government agents from the proper performance of their investigative duties.

*Connell*, 960 F.2d at 196 (emphasis added).

### c. Factors for Court's Consideration

A determination of whether the government has engaged in improper sentencing factor manipulation is "a factbound determination" that must be made on "a case-by-case basis." *Fontes*, 415 F.3d at 181. Absent clear error, the sentencing court's determination will not be disturbed. *Id.* (noting clear-error review). In resolving a claim of sentencing factor manipulation, the court should focus its attention primarily on the government's conduct and motives. *Montoya*, 62 F.3d at 4; *Gibbens,* 25 F.3d at 31.

- Government's motives -- Was the government's motive to increase the defendant's sentence rather than to further legitimate investigative goals? Agents' motives, however, need not have been of "crystalline purity" for a defendant's claim to fail, provided that the "defendant was otherwise legitimately targeted and the sting objectively reasonable in extent." *Fontes*, 415 F.3d at 181 (internal citation omitted).

- Government's conduct -- Did the government "improperly enlarge[] either the scope or the scale of the crime[?]" *Gibbens*, 25 F.3d at 31. Factors that are relevant to this inquiry include (i) the number of drug sales organized by the government, (ii) whether the price paid to the defendant was within market range, (iii) whether officers pressured the defendant into committing the challenged "higher" crime, and whether any such pressure was "outrageous or intolerable." *Montoya,* 62 F.3d at 4. As discussed below, when evaluating the conduct of the government, the court may take into account the defendant's reputation and/or predisposition to commit the challenged crime.

The Court should also consider the defendant's reputation and any predisposition to commit the challenged crime.

- Defendant's reputation – Did the defendant have a reputation for engaging in the challenged criminal conduct? If so, "[t]he government, when investigating the business of a drug dealer who by reputation sells both crack and powder cocaine, is under no obligation to buy only that product or quantity which would produce the smallest sentence for the defendant." *United States v. Terry*, 240 F.3d 65, 71 (1st Cir. 2001).

- Defendant's predisposition – Was the defendant predisposed to engage in the challenged conduct? "[A] defendant's predisposition, or the lack thereof, may have evidentiary significance in the assessment of the government's motives and conduct." *Gibbens*, 25 F.3d at 31, n.3. As stated by the First Circuit, "because a

sentencing factor manipulation claim may turn on whether government agents 'overb[ore] the will of a person predisposed only to committing a lesser crime,' *Connell*, 960 F.2d at 196, we have recognized that some assessment of a defendant's response to an invitation to crime may be warranted." *Fontes*, 415 F.3d at 182. In *Fontes*, for example, although the sentencing court did, in fact, find that the government had engaged in sentencing factor manipulation, a departure below the statutory mandatory minimum was not warranted because the defendant's readiness, willingness, and ability to sell crack cocaine precluded a finding of "extreme and outrageous" conduct by the government. *Id.* at 183. Instead, the court found that the defendant's predisposition to sell crack cocaine was "devastating" to his sentencing factor manipulation claim. *Id.*

### d.     **Defendant's Claim of Sentencing Factor Manipulation is Baseless**

The government objects to the Defendant's motion for a downward departure and his assertion that the government agents involved in this case engaged in sentencing factor manipulation. Based on the government's preliminary investigation into the facts raised by Defendant's motion, the government expects that Defendant's claim of sentencing factor manipulation will fail. The government is unaware of *any facts whatsoever* that would support such a claim.

Instead, the government expects that the evidence will show that Martin had a reputation and predisposition for selling crack cocaine, and that he was ready, willing, and able to do so in this case. The evidence is also expected to show that Martin agreed to sell crack cocaine to the UC and did, in fact, sell crack cocaine to the UC without any improper motives or conduct on behalf of the government agents. In short, the evidence will show that the agents never "overpowered the free will of [Martin] and caused him to commit a more serious offense than he was predisposed to commit." *Barbour*, 393 F.3d at 86. Instead, the evidence will show that Martin was legitimately targeted and the undercover investigation was objectively reasonable in both scope and extent.

Finally, as noted above, because the factual record underlying the Defendant's motion has not yet been developed, the government respectfully reserves the right to supplement this response at the time of sentencing.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:      */s/ Lisa M. Asiaf*
LISA M. ASIAF
Dated: October 5, 2006              Assistant U.S. Attorney
Tel: (617) 748-3268

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 5, 2006.

*/s/ Lisa M. Asiaf*
LISA M. ASIAF
ASSISTANT UNITED STATES ATTORNEY