UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| V. | ) | 05-CR-40023-FDS |
| | ) | |
| THOMAS EUGENE MARTIN | ) | |

**DEFENDANT THOMAS EUGENE MARTIN'S SENTENCING MEMORANDUM**

Now comes defendant THOMAS EUGENE MARTIN, through counsel, and hereby submits this Memorandum in preparation for his sentencing.

**I.   Mr. Martin's Position Regarding his Guideline Sentencing Range, Without Reference to Departures**

As set forth in the Pre-Sentence Report (PSR), the Probation Officer has calculated the Guideline Sentencing Range (GSR) to be 188 to 235 months.  In arriving at this GSR, the Probation Officer contends that pursuant to U.S.S.G. § 2D1.1(c)(6) the base offense level (BOL) attributable to Mr. Martin is 28.  The Probation Officer then grants Mr. Martin a three (3) level reduction, pursuant to § 3E1.1(a) and (b) for acceptance of responsibility, resulting in a total offense level of 25.

The offense level is then elevated to 34 (prior to taking into account the 3 level reduction for acceptance) because the Probation Officer takes the position that the career offender provisions at U.S.S.G. § 4B1.1 are applicable.  Section 4B1.1 directs that the offense level is determined by the offense statutory maximum, which in this case is forty years imprisonment (with a corresponding Guideline offense level of 34).  Once three points are deducted for acceptance of responsibility, the TOL is 31.

Before addressing Criminal History, Mr. Martin renews two (2) objections he had to the calculation of his TOL in the PSR. First, Mr. Martin objects to the inclusion of the so-called "uncharged conduct" between March 8, 2005 and April 21, 2005. Mr. Martin notes that the only person who "attempted" a one-ounce crack cocaine transaction on March 15, 2005 was the undercover ("UC") – Mr. Martin did <u>not</u> show up with drugs to sell on that date (PSR ¶ 26). Further, Mr. Martin did not "attempt" a 28-gram crack cocaine transaction on March 29, 2005 – rather, he was in Connecticut attending his brother's trial on that date (PSR ¶ 27). Mr. Martin particularly objects to inclusion of the "attempted" drug transaction on April 2, 2005. As noted in the PSR, this transaction "did not take place *for reasons not provided by the Government*." Similarly, Mr. Martin objects to the inclusion of the "attempted" drug transaction on April 6, 2005; this transaction also did not occur – and apparently, the Government speculates that Mr. Martin did not show up "because it was a snowy day." These transactions may not have taken place because Mr. Martin continued to explain that he sold cocaine, not crack, and therefore he was unwilling to do the transaction. Finally, Mr. Martin objects to inclusion of the April 20-21, 2005 "attempted" transaction, noting that according to the PSR "the UC left several voice mail messages for Martin, including his return telephone number, but Martin never called him back." (PSR ¶¶ 30-31). It appears again that the only person who "attempted" a drug transaction on that date was the UC. According to the Government, the UC placed **four** recorded calls to Mr. Martin on April 21, 2005; Mr. Martin, however, did not answer or return any of these calls.

It is therefore Mr. Martin's position that he is only accountable for the 10.9 grams of crack cocaine he sold to the UC on March 2, 2005. It is true that Application Note 12 of U.S.S.G. § 2D1.1 states that where there is an agreement to sell a controlled substance, the

2

agreed-upon quantity shall be used to determine the offense level (unless the sale is completed, at which time the amount delivered more accurately reflects the scale of the offense). In this case, it is significant to note that the UC contacted Mr. Martin at least <u>eleven</u> times after the transaction for which Mr. Martin is charged in this case. The final day that the UC tried calling Mr. Martin, he placed four recorded phone calls to defendant, and left several voice mail messages (including his return phone number) but Mr. Martin never called him back (PSR ¶ 31). Mr. Martin should not be held accountable for the 28 grams discussion on March 14, 2005[1].

Additionally, Application Note 12 states that if the defendant establishes that he or she did not intend to provide the agreed upon quantity of drugs (or was not reasonably capable of providing it), the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide. As Mr. Martin argued at the hearing on his motion regarding sentencing manipulation, it was his desire to sell cocaine – not crack – to the UC. As the Court noted at the conclusion of that hearing, there was a gap between the missing (i.e. unrecorded) first call between the informer and Mr. Martin and the recorded second call – and that missing conversation certainly could have pertained to the form of the drugs to be sold (cocaine vs. crack). Given Mr. Martin's reluctance to sell crack, it is possible to infer that he did not sell additional drugs to the UC because he did not intend to provide crack after that first deal.

---

[1] Defendant acknowledges that the Probation Officer has only attempted to hold him accountable for 21.8 grams of crack for the "attempted" transaction on March 14, 2005. The 28 grams referred to in the above paragraph is based on the fact that paragraphs 23 through 26 of the PSR make reference to an "attempted one-ounce crack cocaine transaction."

Given Mr. Martin's position that the amount of crack cocaine is at least 5 grams but less than 20 grams, the base offense level should be $26^2$. After a three level reduction is applied for acceptance of responsibility, Mr. Martin's TOL should be 23.

Mr. Martin objects to the Probation Officer's application of the career offender provisions found at U.S.S.G. § 4B1.1 on the grounds that he only has one prior felony conviction for either a crime of violence or an applicable controlled substance offense. It is Mr. Martin's position that his July 21, 2003 conviction for resisting arrest does not qualify as a "crime of violence" for purposes of the career offender guidelines. In United States v. Sousa, the First Circuit held that any Massachusetts conviction that carries a potential penalty of a year or more in prison qualifies as a "felony" for federal purposes. See 468 F.3d 42 (1st Cir. 2006). The defendant in Sousa argued unsuccessfully that because his conviction took place in the Boston Municipal Court, where a state prison sentence could not be imposed, the conviction was a misdemeanor. See id. at 43. The Court rejected that argument, noting that the Massachusetts Superior Court had concurrent jurisdiction over the offense and could have imposed a state prison sentence of longer than one year, thereby making the prior conviction a felony. See id. at 44.

In Mr. Martin's case, his prior conviction was pursuant to G.L. ch. 268, § 32B ("Resisting Arrest"). Subsection (d) states that "Whoever violates this section shall be punished by imprisonment in a jail or house of correction for not more than two and one-half years or a fine of not more than five hundred dollars, or both" (emphasis added). The Superior Court does not

---

[2] Mr. Martin will address the United States Sentencing Commission's decision to promulgate an amendment that modifies the penalties for crack cocaine offenses in Section III of this Memorandum.

have concurrent jurisdiction with the District Courts for violation of this statute; therefore, Mr. Martin could <u>not</u> have been sentenced to one year or more <u>in prison</u>.

Turning to the calculation of his Criminal History Category, the Probation Officer states in the PSR that Mr. Martin has 5 Criminal History Points, thereby making him a CHC III. Mr. Martin renews his objection to receiving one criminal history point for his September 11, 2003 resisting arrest conviction. Pursuant to U.S.S.G. § 4A1.2(c), "sentences for the following prior offenses . . .are counted <u>only if</u> (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense. . ." Resisting arrest is on this list of prior offenses that are not counted unless they meet criteria (A) and (B) quoted above. As Mr. Martin did <u>not</u> receive any sentence of imprisonment or probation, nor was his resisting arrest conviction similar to the instant offense (sale of crack cocaine), his particular resisting arrest conviction does <u>not</u> satisfy either of the exceptions and should not receive any points. It is Mr. Martin's position that his total criminal history score is 4, not 5. Mr. Martin acknowledges that as a practical matter, the difference between his position and the Probation Officer's regarding the total criminal history score does not matter, as both 4 and 5 points result in a CHC of III.

As this section deals with Mr. Martin's position regarding his GSR <u>without</u> reference to departures, it is Mr. Martin's position that with a TOL of 23 and a CHC of III, his GSR should be 57 to 71 months.

**II.     Mr. Martin Should be Given a Downward Departure Because his Criminal History Category Substantially Over-Represents the Seriousness of his Criminal History**

It is Mr. Martin's position that the criminal history category in this case substantially over-represents the seriousness of his criminal history or the likelihood that the defendant will commit other crimes. As such, it produces a sentence that is greater than necessary to achieve deterrence. See U.S.S.G. § 4A1.3(b)(1); 18 U.S.C. § 3553(a)(2)(B).

It is Mr. Martin's position that he has only one predicate offense for purposes of the Career Offender Guideline, and that he therefore cannot be classified as a career offender. Should the Court find that the career offender provision in § 4B1.1 does apply to Mr. Martin, defendant respectfully suggests that this Court should depart downward from the required Criminal History Category of VI because this category over-represents Mr. Martin's actual criminal history. Section 4A1.3 of the Guidelines allows a sentencing court to depart downward from the GSR when the "'defendant's criminal history [is] significantly less serious than that of most defendants in the same criminal history category.'" United States v. Perez, 160 F.3d 87, 89 (1st Cir. 1998). Should the Court find that the career offender provision does apply, defendant respectfully requests a downward departure to Criminal History Category V[3].

Alternatively, it is defendant's position that if the Court finds that his resisting arrest conviction qualifies as a career offender predicate, the advisory nature of the Guidelines allows the Court to exercise its discretion and decline to apply the career offender enhancements for the reasons argued by defendant pursuant to 18 U.S.C. § 3553(a). In particular, 18 U.S.C. §

---

[3] Defendant is aware that pursuant to § 4A1.3, the extent of a downward departure may not exceed one criminal history category.

3553(a)(6), which requires the Court to address "the need to avoid disparity among defendants with similar records" should prohibit application of the Career Offender guideline to Mr. Martin based on his Massachusetts resisting arrest conviction. As noted above, Mr. Martin's resisting arrest conviction (a Massachusetts misdemeanor) is specifically excluded under U.S.S.G. § 4A1.2(c). While U.S.S.G. § 4A1.2(o) states that any federal, state, or local offense punishable by a term of imprisonment exceeding one year is a felony, it is Mr. Martin's position that the resisting arrest statute is <u>not</u> punishable by the requisite term of imprisonment – i.e. one year in state prison; rather, it is only punishable by incarceration in a jail or house of correction. To find resisting arrest as a felony for guideline purposes (because it is punishable by up to two and one half years of custody in a jail or house of correction) places Massachusetts prior offenses in a disparate category from other states. Importantly, a defendant sentenced in any of the other states in the First Circuit with the same record as Mr. Martin would <u>not</u> be deemed career offenders, as none of the other states in the First Circuit punish resisting arrest with a potential sentence greater than one year. Defendant respectfully submits, therefore, that the career offender provision should not be applied, and his GSR should be 57 to 71 months based on a TOL of 23 and a CHC of III.

### III.     Mr. Martin's Sentence After Consideration of the Factors Set Forth in 18 U.S.C. § 3553(a)

In recognition of the fact that the United States Sentencing Guidelines were rendered "advisory" by the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), defendant submits that a sentence lower than the Guideline Sentencing Range (GSR) is

appropriate when considering the factors the Court is directed to consider in imposing a sentence pursuant to 18 U.S.C. § 3553(a). Defendant therefore submits that a sentence of sixty (60) months is appropriate[4].

Section 3553(a)(1) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant when imposing a sentence. It is worthwhile to note that "when put side by side, the Guideline provisions and statutory provisions under section 3553(a) often contradict one another." United States v. Myers, 2005 U.S. Dist. LEXIS 1342 (S. D. Iowa Jan. 26, 2005) (citing United States v. Ranum, 2005 U.S. Dist. LEXIS 1338 (E.D. Wis. Jan 14. 2005)). For example, under the Guidelines, courts are generally prohibited from considering the defendant's age (§ 5H1.1), education and vocational skills (§ 5H1.2), socio-economic status (§ 5H1.10), or lack of guidance as a youth (§ 5H1.12). Section 3553(a)(1), however, requires a Court to consider these factors, as they compose the "history and characteristics" of a particular defendant and are necessary components to an individualized sentence. As explained more fully below, a sentence of sixty (60) months is therefore appropriate and adequate.

Section 3553(a)(1) requires the Court to consider the history and characteristics of the defendant. Mr. Martin has not spoken to his father (Thomas Borders) since 1995, and his father was never part of his life (PSR ¶ 77). Mr. Martin's mother reports that Mr. Borders has previously been incarcerated (PSR ¶ 77). Mr. Martin also notes that he has had a strained relationship with his mother over the years (PSR ¶ 74). Mr. Martin describes his own mental

---

[4] Mr. Martin is aware that the crime of which he stands convicted carries a mandatory minimum sentence of five years.

health as "not normal" and says he has been through a lot of events in his life that have left him angry and unhappy (PSR ¶ 93). Additionally, Mr. Martin began consuming alcohol when he was 15 or 16 years old, eventually consuming it daily (PSR ¶ 98). He also used marijuana, cocaine, and other drugs periodically (PSR ¶¶ 99-101). Unfortunately, Mr. Martin had a troubled childhood lacking in strong parental relationships and guidance, and turned to drugs and alcohol to ease feelings that his mental health was "not normal."

Mr. Martin also reports, however, that he would like to become involved in an outreach program that warns teenagers about becoming involved in the criminal justice system (PSR ¶ 96). Mr. Martin is aware of the negative path he has chosen to take, and is interested in getting his life back on track as soon as possible for the sake of himself and his young son. Given the history and characteristics of the defendant, a sentence of sixty (60) months is more than adequate.

The nature and circumstances of the offense also warrant a sentence of sixty (60) months. Mr. Martin acknowledges that he has made a serious error in judgment – and violated federal law – in committing the crime of which he stands convicted. He also submits, however, that given the United States Sentencing Commission's announcement that it will amend the penalties for crack offenses (discussed at length below) and the fact that he is potentially being designated a career offender based on a resisting arrest conviction – a Massachusetts misdemeanor[5] and a crime which would <u>not</u> allow him to be designated a career offender had the conviction occurred

---

[5] Not only was Mr. Martin convicted of a Massachusetts <u>misdemeanor</u> when he pled guilty to resisting arrest, but his sole punishment was imposition of a $100 fine. Surely the punishment doled out by a District Court of the Commonwealth of Massachusetts is not indicative that this crime was considered to be a violent felony.

in any of the other states in the First Circuit – warrants a sentence that is significantly lower than that proscribed by the career offender guidelines.

The United States Sentencing Commission's announcement that it will amend the penalties for crack cocaine offenses also supports a sentence outside of the advisory guideline system. The United States Sentencing Commission has recently taken action to address sentencing disparities resulting from federal cocaine sentencing policies. At its April 18, 2007 public meeting, the Commission voted to promulgate an amendment that modifies the penalties for crack cocaine offenses. The Amendment will reduce crack penalties by two (2) points[6]. While this amendment does not go into effect until November 1, 2007, it is defendant's position that a reduction in his Guideline Sentencing Range is appropriate based on the strong view of the

---

[6] A variety of calculations are required to set forth the practical effect of a two (2) point reduction to Mr. Martin's BOL:

Relying upon the Probation Officer's calculations – before application of the career offender enhancement – the two point reduction would result in a TOL of 23 (BOL of 26, minus 3 for acceptance of responsibility). With a TOL of 23 and a CHC III (as calculated by the Probation Officer prior to the career offender enhancement) the GSR would be 57-71 months.

With a TOL of 21 (BOL of 24, minus 3 for acceptance of responsibility) and a CHC III (argued for by defendant on the grounds that he should only be held accountable for the 10.9 grams of cocaine he actually sold to the UC on March 2, 2005), the GSR would be 46-57 months.

Assuming that the Court agrees with the Probation Officer's assertion that the career offender guidelines apply to Mr. Martin, the two point reduction would not actually affect the TOL, which would remain 31 based on the fact that the offense level is determined by the offense statutory maximum. The GSR would therefore be the 188 to 235 months suggested by the Probation Officer in the PSR. This is also true even if the Court finds that Mr. Martin should only be held accountable for 10.9 grams of crack.

Finally, assuming that the Court finds that the career offender enhancement applies, but agrees with the defendant that a downward departure is warranted because the criminal history category overstates the seriousness of Mr. Martin's criminal history, the TOL would be 31 and the CHC would be V, resulting in a GSR of 135 to 168 months.

Commission that this amendment is only a partial solution to some of the problems associated with the 100-to-1 drug quantity ratio. Finally, as the Court is well aware, the United States Supreme Court has recently granted certiorari in a case involving the 100-to-1 ratio between crack and powder cocaine. In Kimbrough v. United States, Case number 06-6330, the Fourth Circuit reversed the defendant's below range sentence, holding that "a sentence that is outside the guideline range is per se unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder cocaine offenses." United States v. Kimbrough, 174 Fed. Appx. 798 (4th Cir. 2006). A sentence of sixty (60) months is therefore adequate and appropriate.

Section 3553(a)(2) requires the Court to consider the need for the sentence imposed to take into consideration four (4) specific factors. These four (4) factors are as follows: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. As addressed more fully below, a sentence of sixty (60) months would adequately take these four factors into consideration.

Section 3553(a)(2)(A) requires the Court to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. It is Mr. Martin's position that a sentence of sixty (60) months does reflect the seriousness of the offense and provides just punishment. This is particularly true in light of the fact that the United States Sentencing Commission is on the verge of amending the crack guidelines in an attempt to begin rectifying the 100-to-1 disparity between crack and cocaine, and

in light of the fact that Mr. Martin faces the possibility of a career offender sentence based in part on a conviction for the Massachusetts misdemeanor of resisting arrest – a conviction that would <u>not</u> qualify him as a career offender had it occurred in any other state in the First Circuit (or, for that matter, in most other states in the country).

Section 3553(a)(2)(B) requires the Court to impose a sentence that affords adequate deterrence to criminal conduct. While a sentence of sixty (60) months is shorter than the GSR of 188 to 235 months suggested by the Probation Officer, it still is a substantial sentence which affords adequate deterrence to criminal conduct for others tempted to emulate Mr. Martin's conduct. Mr. Martin reports that he has a six (6) year old son who he had a really good relationship with prior to his detention, and he plans to re-establish that relationship as soon as he is released (PSR ¶ 82). Mr. Martin has significant incentive, in the form of his son, to conform his behavior to what society and the law expects once he is released. Further, Mr. Martin stated during his Pre-Sentence Interview that given everything he has been through in his life, it is a "blessing that he is still alive." (PSR ¶ 85). Mr. Martin looks forward to securing employment and a place of his own after he serves whatever sentence is imposed on him, and respectfully submits that a sixty (60) month sentence is adequate to deter him from future criminal conduct.

Section 3553(a)(2)(C) requires the Court to impose a sentence that protects the public from further crimes of the defendant. A sentence of sixty (60) months is adequate to achieve this purpose. As noted above, Mr. Martin has significant incentive, in the form of his son, to conform his behavior to what society and the law expects once he is released. Further, Mr. Martin is not before this Court convicted of a crime involving any allegations of violence. It remains Mr.

Martin's position that his resisting arrest conviction also was not a violent crime; therefore, the need to protect the public from further crimes of the defendant is minimal in these circumstances.

Finally, § 3553(a)(2)(D) requires the Court to impose a sentence that provides the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner. It is Mr. Martin's position that a sentence of sixty (60) months would be adequate for him to receive mental health counseling to address childhood issues that trouble him, as well as to possibly receive treatment for alcohol and drug use.

Given the facts stated above, as well as the presence of a mandatory post-incarceration term of supervised release, defendant suggests that a sentence of sixty (60) months is appropriate.

Respectfully submitted,

/s Christie M. Charles

George F. Gormley (BBO# 204140)
Christie M. Charles (BBO# 646995)
George F. Gormley, P.C.
755 East Broadway, 3rd floor
South Boston, MA 02127
(617) 268-2999

**Dated:**     October 9, 2007

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 9, 2007.

/s Christie M. Charles

Christie M. Charles

13